No. _____

---

# United States Court of Appeals for the Federal Circuit

MILITARY-VETERANS ADVOCACY, INC.

*Petitioner,*

v.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS,

*Respondent.*

---

## PETITION FOR REVIEW

---

Military-Veterans Advocacy

John B. Wells
LA Bar #23970
P. O. Box 5235
Slidell, LA 70469-5235 (mail)
769 Robert Blvd. Suite 201D
Slidell, LA 70458 (physical)
Phone: (985) 641-1855
Direct: 985-290-6940
Email: JohnLawEsq@msn.com

## Basis of the Petition

Pursuant to 38 U.S.C. § 502, Federal Rules of Appellate Procedure Rule 15(a), and Federal Circuit Rules 15 and 47.12, Petitioner Military-Veterans Advocacy (MVA) petitions the Court for review of final rules of the Department of Veterans Affairs (hereinafter "VA"), entitled "*SC for Disabilities From Exposure to Certain Herbicide Agents or Based on Service in the RVN*" and "*Developing Claims Based on Herbicide Exposure in Thailand During the Vietnam Era*" that were issued by Respondents in the Veterans Benefits Manual M21-1, Part IV, Subpart ii. (Hereinafter final rule). The final rule was effective on its date of issuance, December 31, 2019.

## Petitioner's Standing.

MVA is a non-profit corporation organized under the laws of Louisiana who has been granted tax exempt status under 26 U.S.C. § 501(c)(3). MVA litigates, legislates and educates on behalf of members of the military and military veterans. This includes pursuing appeals on behalf of veterans who have been improperly denied earned veterans' benefits.

MVA has in excess of 900 members and is growing quickly. The corporation has four sections, Blue Water Navy,(hereinafter BWN, Agent Orange Survivors of Guam, (hereinafter AOSOG) Veterans of Southeast Asia

(hereinafter VOSEA) and Veterans of Panama (hereinafter VOP). Two

sections, BWN and VOSEA are directly impacted by the final rule. BWN

includes those who served in the waters offshore Vietnam including the

territorial sea and offshore. This would include the theater of combat defined by

Executive Orders 11216, 11231 and 32 C.F.R. § 578.26. VOSEA includes

those who were stationed in the nation of Thailand conducting operations in

support of the war in Vietnam.

MVA has been found by this Court to have standing to bring actions on

behalf of veterans. *Procopio v. Sec'y of Veterans Affairs*, 943 F.3d 1376, 1378

n. 1 (Fed. Cir. 2019)

## Jurisdiction

Jurisdiction is alleged under 38 U.S.C. § 502 for judicial review pursuant

to Chapter 7 of Title 5 of the United States Code, specifically 5 U.S.C. § 706.

This Court has jurisdiction because the VA failed to publish the final rule in the

Federal Register as required by 5 U.S.C. § 552[1][B] [C][D] and [E].

Specifically the final rule is a statement of the general course and method by

which its functions are channeled and determined, constitutes a rule of

procedure, is an interpretation of general applicability formulated and adopted

by the agency and is a revision and/or amendment of the foregoing under 5

U.S.C. § 552(a)(1)(D).  Additionally, this is an interpretation of law, specifically 38 U.S.C. §§ 1113(b), 1116 and 1116A which vests this Court with jurisdiction.  *Procopio v. Sec'y of Veterans Affairs*, 943 F.3d 1376, 1380 (Fed. Cir. 2019.  Finally, the final rule is a response to requests for rulemaking.

Petitioner is cognizant of this Court's jurisdiction findings in *Disabled American Veterans v. Secretary of Veterans Affairs*, 859 F.3d 1072 (Fed. Cir. 2017) (*DAV*), and *Gray v. Secretary of Veterans Affairs*, 859 F.3d 1072 (Fed. Cir. 2017), that it lacks jurisdiction under Section 502 to review interpretive rules if VA promulgates them in its internally binding administrative staff manual such as the M21-1 Adjudication Manual.  Petitioner submits that *DAV*'s holding is mistaken and notes that the Supreme Court granted certiorari to review it.  Following merits briefing, however, the *Gray* case became moot, so the most the Court could do was vacate the *Gray* panel's decision.  A current challenge to *DAV* is pending before this Court in *National Organization of Veterans Advocates v. Secretary of Veterans Affairs* docket number No. 20-1321.  The Court should find that *DAV* was wrongly decided or, alternatively, that for the reasons discussed herein the instant case is distinguishable.

The final rule does constitute final agency action for purposes of a Chapter 7 of Title 5 United States Code.  Review under 5 U.S.C. § 706 is

appropriate since the failure to publish the final rule in the Federal Register triggers this Court's jurisdiction. Review is further proper under 5 U.S.C. § 704 since there is no other remedy at law. Although not issued under the rulemaking provisions of 5 U.S.C. § 553, the Court is empowered under this provision to review the final agency action since the final rule is a rule of general applicability, interprets a statute, was issued in response to requests for rulemaking and effectively denied the provisions of those requests. *Preminger v. Secretary of Veterans Affairs*, 632 F.3d 1345, 1352 (Fed. Cir. 2011).

## Factual Background

In December of 2015, Robert Chilsom petitioned the VA to initiate rulemaking in a document entitled: *Petition to the Department of Veterans Affairs to Initiate Rule Making: A Request for Examination and Codification of the Department of Veterans Affairs Herbicide Exposure Policy for Thailand Military Bases*. The Petition specifically asked the Secretary to (1) codify the policy regarding herbicide exposure in Thailand during the Vietnam era, and (2) further expand the scenarios in which VA considers a veteran to have been exposed to herbicides while serving in Thailand.

On September 22, 2017, the Respondent granted the rulemaking request "to the extent that VA will initiate rulemaking on the issue of herbicide

exposure in Thailand during the Vietnam era."

On December 3, 2018, MVA hand delivered a rulemaking request to Respondent Secretary of Veterans Affairs Robert Wilkie entitled *Request for Rulemaking 38 C.F.R. § 3.307 and M21-1 Manual*.

On January, this Court, in a 9-2 decision, overruled their prior decision in *Haas v. Peake* 525F.3d 1168 (Fed. Cir. 2008) and found that the phrase "in the Republic of Vietnam," as used in the Agent Orange Act of 1991 included the territorial sea of that nation.    *Procopio v. Wilkie*, 913 F.3d 1371 (Fed. Cir. 2019). (*Procopio* I).   The *Procopio* I Court also found, and the VA conceded, that the "waters offshore," as used in 38 C.F.R. § 3.307(a)(6)(iii) extended past the territorial sea.   Judge Lourie, in his concurrence indicated that 38 C.F.R. § 3.307(a)(6)(iii) required veterans serving in waters offshore to be covered by the presumption.

On June 12, 2019, Congress passed the Blue Water Navy Vietnam Veterans Act of 2019.   The legislation was signed by the President on June 25, 2019 and was codified by adding an additional section, 38 U.S.C. § 1116A. The Act, Pub. L. 116-23, extended the presumption of exposure to an area

"offshore" which generally mirrored the territorial sea.[1]  The Act also included authority for the Secretary to stay implementation of the Act "until the date on which the Secretary commences the implementation of such section 1116A." Pub. L. 116-23 § 2c3a.

On July 1, 2019 the Secretary instituted a stay of all claims filed under *Procopio* and Pub.L.116-23.  On July 25, 2019 Petitioner and others filed a Petition for Expedited Review concerning the Secretary's ability to stay *Procopio* claims.

This Court found that the Secretary had the authority to issue a stay, but only until January 1, 2020 and not beyond.    *Procopio v. Sec'y of Veterans Affairs*, 943 F.3d 1376, 1381 (Fed. Cir. 2019). (*Procopio* II*). The *Procopio* II court specifically did not decide whether § 1116A overruled *Procopio* I or replaced the original provisions of § 1116, upon which *Procopio* I was decided. ("We do not decide whether § 1116A replaces § 1116.  Both parties have raised arguments as to why the two sections may have separate applications. Petitioners' Br. 38–42; Government's Br. 34–41.")  *Procopio* II, 943 F.3d at

---

[1]  Due to an administrative error, the offshore area added approximately 360 square nautical miles to the area recognized by *Procopio* I.

1382.

On December 31, 2019, the respondent issued changes to his M21-1 Manual in response to the rulemaking request.

On January 1, 2020, the VA began to adjudicate Blue Water Navy claims.

On January 3, 2020 MVA submitted another rulemaking request entitled Request for Rulemaking 38C.F.R § 3.307 and M21-l Manual.   An amplification entitled *Amplification of rulemaking request concerning the presence of herbicide and veteran exposure in Thailand* was sent to the Respondent on February 10, 2020.

No further response has been received.

### **Failure to Publish for Notice and Comment.**

Due to an incorrect interpretation of the law, Section iv.ii.2.C.3.e.of the Final Rule impermissibly limits the presumption of exposure from areas that are covered under 38 C.F.R. § 3.307(a)(6)(3), *Procopio* I and the Convention on International Civil Aviation (Chicago, 7 Dec. 1944) 15 U.N.T.S. 295, T.I.A.S. 1591 (hereinafter the Chicago Convention).

Due to an incorrect interpretation of the law, specifically 38 U.S.C. § 1113 and other provisions, Sections iv.ii.1.H.4.a. and iv.ii.1.H.4.b improperly

excludes veterans exposed to herbicide from the presumption of exposure. These veterans were directly exposed to herbicides in the same manner as the veterans covered by the Final Rule.

Although the Secretary committed to issuing rules nothing has been published in the Federal Register as required by law.

Pursuant to the Administrative Procedures Act (APA) this Final Rule should have been published in the Federal Register for a period of public notice and comment prior to its implementation. *See* 5 U.S.C. § 552(a)(1)(D), § 553(b), § 706(a)(2)(D). Respondents' failure to comply with the requirements of the APA, warrants this Court's action to invalidate the Final Rule.

### **Failure to Consider Probability of Exposure to Herbicides.**

Judicial review of the Final Rule also is sought with respect to the general provisions of Sections IV.ii.1.H.4.a through IV.ii.1.H.4.b. These provisions purport to provide coverage to all exposed Thailand veterans. It does not. Coverage is generally limited to those who served on designated Army or Air bases with duties on the base perimeter. This rule excludes, *inter alia*, veterans whose messing, sleeping and living quarters abutted the perimeter and those who were present within the designated wind drift "buffer" zone.

As more fully deprived in the requests for rulemaking, sufficient

evidence existed to show that herbicide was sprayed throughout the Army and Air Force bases in Thailand that were manned by American military personnel. The limitation of the exposure presumption to those having duties on the perimeter ignored the physical location of barracks, messing facilities, showers, recreation facilities, workspaces and other areas where military personnel gathered on and off duty. The Final Rule also ignores the established 500-meter (approximately 1640 feet) buffer zone for ground level spraying due to wind drift. The failure to consider the evidence in formulating the Final Rule was arbitrary and capricious within the scope of 5 U.S.C. § 706(2)(A) and the Final Rule's exclusion is unsupported by substantial evidence as required by 5 U.S.C. § 706(2)(E).

## Failure to Include Veterans Serving in "Waters Offshore" in the Presumption of Exposure.

Judicial review is sought because Section iv.ii.1.H.1.g limits the Blue Water Navy to the area defined in Pub. L. 116-23. The final rule ignores the "waters offshore" provisions of 38 C.F.R. § 3.307(a)(6)(iii), the holdings of *Procopio* I, *supra.* and Judge Lourie's concurrence in that decision. *Procopio* I 913 F.3d at 1381.

This exclusion is arbitrary and capricious within the scope of 5 U.S.C. §

706(2)(A). Existing evidence shows that the dioxin drifted off the coast of Vietnam and deep into the South China Sea. This action is also a failure to follow their own regulation, specifically 38 C.F.R. § 3.307(a)(iii)(6). Since this regulation was issued pursuant to statute, specifically 38 U.S.C. § 1116, it is a violation of 5 U.S.C. § 706(2)(C). Accordingly, the exclusion was unsupported by substantial evidence within the scope of 5 U.S.C. § 706(2)(E).

### Failure to Include Veterans Serving in the Sovereign Airspace of the Republic of Vietnam.

Judicial review is sought because Section iV.ii.2.C.3.e does not allow coverage for .veterans in aircraft over the territory of the Republic of Vietnam and specifically excludes the airspace over its territorial sea. The Final Rule flies in the face of Procopio I in that it is contrary to the unambiguous meaning of 38 U.S.C. § 1116 which, by treaty, includes the airspace and territorial sea.

The Final Rule is not grounded in statute and represents an improper interpretation of the statute. Instead this represents a misreading of the legislative history of Pub. L. 116-23 which states as follows:

> However, an aircraft that passed in the airspace above the offshore waters would not have drawn water from the sea and therefore is not considered present within the offshore waters for purposes of this legislation.

House Report 116-58 at 11-12. The final rule excludes the sovereign airspace over the territorial sea and the landmass of Vietnam in violation of Articles 1 and 2 of the Chicago Convention, *supra*. Congress is presumed to be aware of and legislate consistently with international law. *Murray v. The Schooner Charming Betsy*, 6 U.S. 64 (1804).

Consequently, this exclusion, based on a misinterpretation of legislative history, and not grounded in the statute itself, is a violation of 5 U.S.C. § 706(2)(C). Additionally, the matter is arbitrary and capricious within the scope of 5 U.S.C. § 706(2)(A).

## Conclusion.

For all of these reasons, MVA and its members are adversely affected by the unlawful final rules challenged above, and respectfully petition this Court for review.

Respectfully Submitted:

Military-Veterans Advocacy
/s/ John B. Wells
John B. Wells
LA Bar #23970
P. O. Box 5235
Slidell, LA 70469-5235 (mail)
769 Robert Blvd. Suite 201D
Slidell, LA 70458 (physical)
Phone: (985) 641-1855
Direct: 985-290-6940
Email: JohnLawEsq@msn.com

**Certificate of Service**

The undersigned certifies that the within was served on the respondent Secretary of Veterans Affairs by electronic mail and UPS courier the 18th day of February 2020.

/s/ John B. Wells
John B. Wells

# CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 2,165 by computer word count, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a monospaced typeface using Microsoft Word with 14-point proportionally spaced face.

/s/ John B. Wells
John B. Wells

APPENDIX



Search



(http://www.facebook...(http://twitter.com/...(http://www.youtube.c...

Search

**MENU**

| Topics | ✎ |
|---|---|
| Compensation | |
| eBenefits | ❯ |
| Education Service | ❯ |
| Fiduciary Program | ❯ |
| Home & Auto | ❯ |
| Life Insurance | ❯ |
| Pension | ❯ |
| Stakeholder Enterprise Portal | ❯ |
| Vocational Rehabilitation & Employment | ❯ |

**M21-1, Part IV, Subpart ii, Chapter 1, Section H - Developing Claims for Service Connection (SC) Based on Herbicide Exposure**

Article ID: 554400000014940

<-- Previous Section (/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/554400000001018/content/554400000014323/M21-1,-Part-IV,-Subpart-ii,-Chapter-1,-Section-G---Claims-Based-on-Former-Prisoner-of-War-(FPOW)-Status) Next Section --> (/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/554400000001018/content/554400000033326/M21-1,-Part-IV,-Subpart-ii,-Chapter-1,-Section-I---Developing-Claims-for-Service-Connection-(SC)-Based-on-Other-Exposure-Types)

**Overview**

**In This Section**     This section contains the following topics:

| Topic | Topic Name |
|---|---|
| 1 | **Processing of Herbicide Claims** |
| 2 | **Developing Claims Based on Exposure to Agent Orange for Select Air Force Personnel Through Contact With Contaminated C-123 Aircraft Used in the RVN as Part of Operation Ranch Hand (ORH)** |
| 3 | **Developing Claims Based on Herbicide Exposure on the Korean Demilitarized Zone (DMZ)** |
| 4 | **Developing Claims Based on Herbicide Exposure in Thailand During the Vietnam Era** |
| 5 | **Developing Claims Based on Herbicide Exposure on Johnston Island** |
| 6 | **Developing Claims Based on Herbicide Exposure in Other Locations** |
| 7 | **Claims for Benefits Based on Birth Defects Due to Herbicide Exposure** |
| 8 | **Other Development Procedures for Claims Under the Nehmer Stipulation for Disabilities Resulting From Exposure to Herbicides** |
| 9 | **U.S. Army and Joint Services Records Research Center (JSRRC) Formal Findings Based on Thailand Service** |

---

## 1. Processing of Herbicide Claims

---

**Introduction**     This topic contains information on processing of herbicide claims, including

- **overview of policy changes based on *Public Law (PL) 116-23***
- **claims requiring centralized processing**
- **regional office (RO) processing of herbicide claims**
- **development responsibilities for centralized processing teams**
- **referring a claim for centralized processing**
- **requesting Federal records of Republic of Vietnam (RVN) service**
- **evidence-based determinations of eligible offshore water service**, and
- action to take when the

  - **claimed disability is not recognized under 38 CFR 3.309(e)**, and
  - **Veteran claims herbicide exposure but does not claim a disability**.

---

**Change Date**     December 31, 2019

---

**IV.ii.1.H.1.a. Overview of Policy Changes Based on PL 116-23**

Effective January 1, 2020, upon implementation of the statutory amendments in *Public Law (PL) 116-23, the Blue Water Navy Vietnam Veterans Act of 2019*, the Department of Veterans Affairs (VA) established centralized processing teams at designated regional offices (ROs) and decision review operations centers (DROCs) and has instituted the following policy changes regarding herbicide claims processing:

- Centralized processing for all herbicide claims (excluding legacy appeals) from Vietnam-era Veterans for all branches of service.
- Concessions of qualifying service, to include in-country, inland waterways, and eligible offshore waters as defined in *PL 116-23* are the sole jurisdiction of the centralized processing teams or designated legacy appeals personnel.
- Centralized rating and authorization for all claims (excluding legacy appeals) impacted by the new law.
- Creation of a specialized team of subject matter experts, the Records Research Team, who will research complex herbicide-related cases.
- The *Navy and Coast Guard Ships Associated with Service in Vietnam and Exposure to Herbicide Agents*, aka "the ship list," previously used by all claims processors to concede qualifying service, is now restricted to the Records Research Team and designated legacy appeals personnel.

*Notes*:

- Concession of qualifying service, to include in-country Republic of Vietnam (RVN) service, service on the inland waterways, and service on the eligible offshore waters as defined in the new law, is the sole responsibility of the centralized processing teams. Their evidence-based determination will be formally documented, uploaded to the Veteran's electronic claims folder (eFolder), and is binding on all ROs. Effective immediately, ROs are no longer authorized to establish if a Veteran's service qualifies for herbicide exposure in RVN claims.
- The centralized processing teams will be responsible for all adjudication activities involved in processing blue water Navy contentions, as well as all other concurrently pending non-blue water issues.
- If a centralized processing team determines a Veteran's service is categorized as in-country RVN service or in Thailand or Korea only, the claim will not require centralized processing for the rating and authorization activities. In these cases, the RO will be responsible for determining if the service qualifies for herbicide exposure.

**IV.ii.1.H.1.b.**
**Claims Requiring Centralized Processing**

Use the table below to determine if a claim requires centralized processing.

| If the claim involves ... | And ... | Then ... |
|---|---|---|
| • a disability eligible for a presumption of service connection (SC) on the basis of exposure to herbicides under **38 CFR 3.309(e) (http://www.ecfr.gov/cgi-bin/text-idx?SID=78791cfa2edf9c676ee0728238fe04e6&mc=true&node=se38.1.3_1309&rgn=div8)**, or<br>• the survivor is claiming that the principal or contributory cause of the Veteran's death is, or is secondary to, one or more of the conditions listed in **38 CFR 3.309(e) (http://www.ecfr.gov/cgi-bin/text-idx?SID=78791cfa2edf9c676ee0728238fe04e6&mc=true&node=se38.1.3_1309&rgn=div8)** | --- | the claim must be referred to a centralized processing team for adjudication as directed by **M21-1, Part IV, Subpart ii, 1.H.1.e.** |
| a newly claimed disability from a Veteran for whom SC has already been granted by reason of conceded exposure to herbicides | exposure was previously conceded based on in-country RVN, Thailand, or Korean demilitarized zone (DMZ) service | the new claim will remain with the RO. |
| | exposure was conceded based on other avenues, such as nautical service | the claim must be referred to a centralized processing team for adjudication as directed by **M21-1, Part IV, Subpart ii, 1.H.1.e.** |

| If the claim involves ... | And ... | Then ... |
|---|---|---|
| | --- | the claim must be referred to a centralized processing team for adjudication as directed by **M21-1, Part IV, Subpart ii, 1.H.1.e**. |
| • a condition that is not recognized as a presumptive condition under **38 CFR 3.309(e) (https://www.ecfr.gov/cgi-bin/text-idx? SID=9af5e29f461a98aeb34add867cc8ee45&mc=true&node=se38.1.3_1309&rgn=div8)**, or<br>• a survivor who is claiming that the principal or contributory cause of the Veteran's death is, or is secondary to, a condition due to herbicide exposure, but the condition is not listed in **38 CFR 3.309(e) (https://www.ecfr.gov/cgi-bin/text-idx? SID=9af5e29f461a98aeb34add867cc8ee45&mc=true&node=se38.1.3_1309&rgn=div8)** | the claimant does *not* provide competent scientific or medical evidence linking the condition to herbicide exposure | the claim will remain with the RO. |
| | the claimant provides competent scientific or medical evidence linking the condition to herbicide exposure | the claim must be referred to a centralized processing team for adjudication as directed by **M21-1, Part IV, Subpart ii, 1.H.1.e**. |
| service that is outside the RVN herbicide use time frame specified in **38 CFR 3.307(a)(6) (http://www.ecfr.gov/cgi-bin/text-idx? SID=eeb25614ff133ec52c6f89f62aa156dc&mc=true&node=se38.1.3_1307&rgn=div8)** | --- | the claim will remain with the RO. |

**IV.ii.1.H.1.c.  RO Processing of Herbicide Claims**

ROs are not authorized to establish if a Veteran's service qualifies for herbicide exposure.  This function is now the sole responsibility of the centralized processing teams.

All ROs are responsible for the initial steps in claims based on herbicide exposure. This includes requesting all military records, to include service treatment records (STRs) and the entire official military personnel file (OMPF), as well as assigning the appropriate claim attributes, discussed in **M21-1, Part IV, Subpart ii, 1.H.1.e**, to ensure proper routing for centralized processing.

*Important*:  For supplemental claims based on herbicide exposure, consider *PL 116-23* as both new evidence sufficient to render the supplemental claim complete, and relevant evidence sufficient to trigger a duty to assist and issue a merit-based decision.

*References*:  For more information on

- referring a claim for centralized processing, see **M21-1, Part IV, Subpart ii, 1.H.1.e**, and
- requesting Federal records of RVN service, see **M21-1, Part IV, Subpart ii, 1.H.1.f**.

**IV.ii.1.H.1.d. Development Responsibilities for Centralized Processing Teams**

For the claims described in **M21-1, Part IV, Subpart ii, 1.H.1.b**, the centralized processing teams are responsible for the following claim development steps:

- researching military records and Veterans Benefits Administration (VBA)-approved sites
- using VBA-approved tools
- documenting the evidence-based determination for the Veteran's category(ies) of RVN service
- sending subsequent development letters to Veterans or survivors
- requesting examinations or medical opinions and any other relevant records, and
- referring claims, when appropriate, to the Records Research Team.

*Note*:  The centralized processing teams will be responsible for all adjudication activities involved in processing blue water Navy contentions, as well as all other concurrently pending non-blue water issues.

**IV.ii.1.H.1.e. Referring a Claim for Centralized Processing**

Follow the steps below for claims identified as needing centralized processing as discussed in **M21-1, Part IV, Subpart ii, 1.H.1.b.**

| Step | Who Is Responsible | Action |
|------|--------------------|--------|
| 1 | intake processing center (IPC) | Establishes the appropriate end product (EP). |
| 2 | RO | Is the claimant claiming a disability eligible for a presumption of SC under **38 CFR 3.309(e) (https://www.ecfr.gov/cgi-bin/text-idx?SID=9af5e29f461a98aeb34add867cc8ee45&mc=true&node=se38.1.3_1309&rgn=div8)**, or has he/she provided competent scientific or medical evidence linking the condition to herbicide exposure?<br><br>• If *yes*,<br><br>    • applies the *Agent Orange –Vietnam* corporate flash, and<br>    • proceeds to the next step.<br><br>• If *no*, processes the claim under normal claim procedures. |
| 3 | RO | Are the *DD Form 214, Certificate of Release or Discharge from Active Duty*, STRs, and entire OMPF of record?<br><br>• If *yes*, adds *Blue Water Agent Orange* special issue to all herbicide-related contentions.<br>• If *no*,<br><br>    • requests the missing records in accordance with **M21-1, Part IV, Subpart ii, 1.H.1.f**<br>    • adds the *Secondary Action Required* tracked item, and<br>    • adds *Blue Water Agent Orange* special issue to all herbicide-related contentions.<br><br>*Important*: The above noted special issue must be used in all Vietnam-era herbicide-related claims, regardless of branch of service. |
| 4 | National Work Queue (NWQ) | Routes claim to a centralized processing team. |

**IV.ii.1.H.1.f. Requesting Federal Records of RVN Service**

Prior to sending claims for centralized processing, ensure that all military records, to include STRs and the entire OMPF are of record.

Use the table below to develop for Federal records prior to sending for centralized processing.

| If the Veteran claims ... | And the claims folder is ... | Then ... |
|---|---|---|
| to have been stationed in the RVN | an eFolder | submit a request through the Personnel Information Exchange System (PIES), using request code O50.<br><br>*Notes*:<br><br>• If a PIES request under a code other than O50 was previously submitted and only a partial personnel file is of record, submit a PIES O50 for the entire personnel file.<br>• Do *not* resubmit a PIES O50 request if already submitted and received under prior claims development. |
| | a paper claims folder | submit a request through PIES, using request code O34.<br><br>*Notes*:<br><br>• If the response to the PIES O34 request is negative, request the entire personnel record using the PIES O18 code.<br>• If STRs are needed, follow the relevant procedures in **M21-1, Part III, Subpart iii, 2 (/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/554400000001018/content/554400000014154/M21-1,-Part-III,-Subpart-iii,-Chapter-2,-Section-A---General-Information-on-Service-Records)** to obtain them. |
| temporary duty (TDY) service in the RVN | an eFolder | submit a request through PIES, using request code O50.<br><br>*Note*: Do *not* resubmit a PIES O50 request if already submitted and received under prior claims development. |
| | a paper claims folder | submit a request through PIES, using request code O39.<br><br>*Note*: If STRs are needed, follow the relevant procedures in **M21-1, Part III, Subpart iii, 2 (/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/554400000001018/content/554400000014154/M21-1,-Part-III,-Subpart-iii,-Chapter-2,-Section-A---General-Information-on-Service-Records)** to obtain them. |

*Important*: A claim may not be denied solely because service in the RVN cannot be verified

• until the end of the initial 30-day and 15-day follow-up response periods, and/or
• all requested Federal records needed to verify service in the RVN have been received *or* a formal response has been received indicating the records are unavailable.

*References*: For more information on

- Federal records requests, see **M21-1, Part III, Subpart iii, 1.C.1.b (/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/554400000001018/content/554400000014156/M21-1,-Part-III,-Subpart-iii,-Chapter-1,-Section-C---Requesting-Evidence-From-Federal-Record-Custodians)**, and
- requesting records through PIES, see

    - the **_PIES Participant Guide_ (http://vbaw.vba.va.gov/bl/21/publicat/Users/Pies/PIESparticipantguide.zip)**, and
    - **M21-1, Part III, Subpart iii, 2.D (/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/554400000001018/content/554400000014158/M21-1,-Part-III,-Subpart-iii,-Chapter-2,-Section-D---Requesting-Information-and-Records-Through-the-Personnel-Information-Exchange-System-(PIES))**

| IV.ii.1.H.1.g. Evidence-Based Determinations of Eligible Offshore Water Service | Effective January 1, 2020, the centralized processing teams will make the evidence-based determinations regarding eligible RVN service. These evidence-based determinations are the sole jurisdiction of the centralized processing teams for consistency and recordkeeping purposes, and their determination is binding on all ROs.

Depending on the initial research and analysis conducted by the centralized processing team, the claim will follow one of the paths in the table below. |

| If ... | Then the claim will ... |
|---|---|
| the Veteran<br><br>- had service in Thailand or Korea only, or<br>- had duty or visitation on land in the RVN | be referred back to an RO for processing, to include all further development actions and rating and authorization activities.<br><br>*Note*: Once the claim is returned, the RO will be responsible for determining whether a Veteran's service in Korea or Thailand qualifies for herbicide exposure. |
| the Veteran served on a ship that was in the<br><br>- eligible offshore waters, to include visitation of a qualifying bay or harbor, or<br>- inland waterways | remain with the centralized processing team for all rating and authorization activities. |
| none of the above is shown | - be referred to the Records Research Team for additional research, and<br>- remain with the centralized processing team for all rating and authorization activities. |

| IV.ii.1.H.1.h. Action to Take When the Claimed Disability Is Not Recognized Under 38 CFR 3.309(e) | The Agent Orange Act of 1991, *PL 102-4*, established a presumption of SC for Veterans with service in the RVN during the Vietnam era who subsequently develop specific diseases to a degree of 10 percent or more. |
|---|---|

In herbicide-related claims, if the claimed disability is not recognized as a presumptive condition under **38 CFR 3.309(e) (http://www.ecfr.gov/cgi-bin/text-idx?SID=ce4db74ee1e5ecc339221e5184616cc0&mc=true&node=se38.1.3_1309&rgn=div8)**, then the development activity must send the claimant a letter using the Veterans Benefits Management System (VBMS) development paragraph *AO-not a recognized condition*, requesting scientific or medical evidence showing that the claimed condition is medically associated with dioxin exposures.

*Exception*:  Do not send the letter if the claimant previously submitted the evidence requested in the letter.

*Reference*:  For a list of diseases and the date they became subject to presumptive SC under **38 CFR 3.309(e) (http://www.ecfr.gov/cgi-bin/text-idx?SID=ce4db74ee1e5ecc339221e5184616cc0&mc=true&node=se38.1.3_1309&rgn=div8)**, see **M21-1, Part IV, Subpart ii, 2.C.3.i (/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/554400000001018/content/554400000014556/M21-1,-Part-IV,-Subpart-ii,-Chapter-2,-Section-C---Service-Connection-(SC)-for-Disabilities-Resulting-From-Exposure-to-Environmental-Hazards-or-Service-in-the-Republic-of-Vietnam-(RVN))**.

---

| IV.ii.1.H.1.i. Action to Take When the Veteran Claims Herbicide Exposure but Does Not Claim a Disability | A claim is not substantially complete if a Veteran alleges exposure to herbicides during service but does not claim SC for a specific disability.  In cases such as these, follow the procedures for handling an incomplete application at **M21-1, Part I, 1.B.1.g and h (/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/554400000001018/content/554400000014065/M21-1,-Part-I,-Chapter-1,-Section-B---Duty-to-Notify-Under-38-U.S.C.-5102-and-5103)**. |
|---|---|

*Reference*:  For more information on what constitutes a substantially complete application for benefits, see

- **38 CFR 3.159(a)(3) (http://www.ecfr.gov/cgi-bin/text-idx?SID=eeb25614ff133ec52c6f89f62aa156dc&mc=true&node=se38.1.3_1159&rgn=div8)**
- **M21-1, Part I, 1.A.4.f (/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/554400000001018/content/554400000013969/M21-1,-Part-I,-Chapter-1,-Section-A---Description-and-General-Information-on-Duty-to-Notify-and-Duty-to-Assist)**, and
- **M21-1, Part I, 1.B.1.b (/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/554400000001018/content/554400000014065/M21-1,-Part-I,-Chapter-1,-Section-B---Duty-to-Notify-Under-38-U.S.C.-5102-and-5103)**.

---

**2.  Developing Claims Based on Exposure to Agent Orange for Select Air Force Personnel Through Contact With Contaminated C-123 Aircraft Used in the RVN as Part of ORH**

| | |
|---|---|
| **Change Date** | March 18, 2019 |

**IV.ii.1.H.2.a.  RO Procedure for Claims Based on Exposure to Agent Orange Through Contaminated C-123 Aircraft as Part of ORH**

The St. Paul RO generally has jurisdiction of all claims for service-connected (SC) disability or death associated with Agent Orange exposure through regular and repeated duties flying on, or maintaining, contaminated former Operation Ranch Hand (ORH) C-123 aircraft, which were used to spray Agent Orange in Vietnam. The St. Paul RO will be responsible to address all outstanding issues claimed.

*Exception*:  For jurisdiction of claims from residents of foreign countries, see **M21-1, Part III, Subpart ii, 5.A.1 (/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/554400000001018/content/554400000014136/M21-1,-Part-III,-Subpart-ii,-Chapter-5,-Section-A---Jurisdiction-Over-Claims)**.

The IPC must follow the steps in the table below when a claim based on regular and repeated contact with contaminated C-123 aircraft is received at an RO.

| Step | Action |
|---|---|
| 1 | Review the claim for Agent Orange and/or C-123 annotation. |
| 2 | Establish the proper EP with the *C-123* flash. |
| 3 | Attach the *C-123* special issue contention for each of the presumptive disabilities claimed. |
| 4 | Forward the claim to the St. Paul RO for processing. |

*Reference*:  For more information on processing claims based on contaminated C-123 aircraft, see the **C-123 Aircraft Agent Orange Exposure website (http://www.benefits.va.gov/compensation/agentorange-c123.asp)**.

**3.  Developing Claims Based on Herbicide Exposure on the Korean DMZ**

**Introduction**    This topic contains information on developing claims based on herbicide exposure in the Korean DMZ, including

- **requirements for presumptive SC based on herbicide exposure in the Korean DMZ**
- **units or other military entities identified by the Department of Defense (DoD) as operating in the Korean DMZ during the qualifying time period**, and
- **requesting records from JSRRC in support of a Korean DMZ herbicide claim**.

**Change Date**    December 31, 2019

**IV.ii.1.H.3.a. Requirements for Presumptive SC Based on Herbicide Exposure in the Korean DMZ**

Under **38 CFR 3.307(a)(6)(iv) (http://www.ecfr.gov/cgi-bin/text-idx?SID=eeb25614ff133ec52c6f89f62aa156dc&mc=true&node=se38.1.3_1307&rgn=div8)** and effective February 24, 2011, extend the presumption of herbicide exposure to any Veteran who served

- in a unit determined by VA or the Department of Defense (DoD) to have operated in the Korean DMZ, and
- between September 1, 1967, and August 31, 1971.

*Notes*:

- Before the amendment of **38 CFR 3.307(a)(6)(iv) (http://www.ecfr.gov/cgi-bin/text-idx?SID=eeb25614ff133ec52c6f89f62aa156dc&mc=true&node=se38.1.3_1307&rgn=div8)**, which became effective February 24, 2011, VA conceded exposure to herbicides on a direct basis for Veterans who served between April 1968 and July 1969 in one of the groups listed under **M21-1, Part IV, Subpart ii, 1.H.3.b**.
- The date range above became effective January 1, 2020, under *PL 116-23*.

**IV.ii.1.H.3.b.**
**Units or Other**
**Military Entities**
**Identified by**
**DoD as**
**Operating in the**
**Korean DMZ**
**During the**
**Qualifying Time**
**Period**

The table below shows the units or other military entities that DoD has identified as operating in the Korean DMZ during the qualifying time period of September 1, 1967, to August 31, 1971.

| Major Command Assignment | Unit/Military Entity |
|---|---|
| <ul><li>Combat Brigade of the 2nd Infantry Division, or</li><li>3rd Brigade of the 7th Infantry Division</li></ul> **Note**:  Although the units are listed as subunits of either the 2nd or 7th Infantry Divisions, they generally operated independently and may have been attached to either infantry division. | <ul><li>1st Battalion, 12th Artillery</li><li>1st Battalion, 15th Artillery</li><li>1st Battalion, 9th Infantry</li><li>1st Battalion, 17th Infantry</li><li>1st Battalion, 23rd Infantry</li><li>1st Battalion, 31st Infantry</li><li>1st Battalion, 32nd Infantry</li><li>1st Battalion, 38th Infantry</li><li>1st Battalion, 72nd Armor</li><li>1st Battalion, 73rd Armor</li><li>2nd Battalion, 9th Infantry</li><li>2nd Battalion, 17th Infantry</li><li>2nd Battalion, 23rd Infantry</li><li>2nd Battalion, 31st Infantry</li><li>2nd Battalion, 32nd Infantry</li><li>2nd Battalion, 38th Infantry</li><li>2nd Battalion, 72nd Armor</li><li>2nd Squadron, 10th Cavalry</li><li>3rd Battalion, 23rd Infantry</li><li>3rd Battalion, 32nd Infantry</li><li>5th Battalion, 38th Artillery</li><li>6th Battalion, 37th Artillery</li><li>7th Battalion, 17th Artillery</li><li>54th CBRE Detachment</li><li>6th Aviation Platoon, or</li><li>239th Aviation Company.</li></ul> **Notes**: <ul><li>The 6th Aviation Platoon was deactivated on April 15, 1969, and incorporated into the 239th Aviation Company.</li><li>Service in the Korean DMZ for members of the 6th Aviation Platoon or 239th Aviation Company is limited to helicopter crewmen, which generally consisted of pilots, crew chief, and door gunner (s).  A factual finding must still be made as to the nature of the Veteran's service in determining whether or not herbicide exposure is established.</li></ul> |
| Division Reaction Force | 4th Squadron, 7th Cavalry. |

| Major Command Assignment | Unit/Military Entity |
|---|---|
| Other | • 2nd Military Police Company, 2nd Infantry Division<br>• 2nd Engineer Battalion, 2nd Infantry Division<br>• 13th Engineer Combat Battalion<br>• United Nations Command Security Battalion-Joint Security Area (UNCSB-JSA)<br>• Crew of the USS Pueblo, or<br>• 25th Chemical Company, 2nd Infantry Division. |

**IV.ii.1.H.3.c.
Requesting
Records From
JSRRC in
Support of a
Korean DMZ
Herbicide Claim**

Send a request to U.S. Army and Joint Services Records Research Center (JSRRC) for verification of exposure to herbicides when

- a Veteran claims exposure in Korea, and
- he/she did not have service between September 1, 1967, and August 31, 1971, in a unit or entity listed in **M21-1, Part IV, Subpart ii, 1.H.3.b**.

*Notes*:

- If the claim and available records do not provide sufficient details of the Veteran's Korean DMZ service, send a subsequent development letter to the claimant and allow 30 days for a response.
- Request and review all available military records prior to submitting a request to JSRRC for verification of herbicide exposure.
- If the Veteran fails to provide sufficient information to complete a JSRRC request, refer the claim to the rating activity.

*Reference*:  For more information on submitting a request to JSRRC, see the ***Defense Personnel Records Information Retrieval System (DPRIS) User Guide* (https://www.dpris.dod.mil/downloads/dpris_user_guide.pdf)**.

**4.  Developing Claims Based on Herbicide Exposure in Thailand During the Vietnam Era**

**Introduction**

This topic contains information on developing claims based on herbicide exposure in Thailand during the Vietnam era, including

- **special consideration for claims based on herbicide exposure in Thailand during the Vietnam era**, and
- **verifying exposure to herbicides in Thailand during the Vietnam era**.

**Change Date**

December 31, 2019

**IV.ii.1.H.4.a. Special Consideration for Claims Based on Herbicide Exposure in Thailand During the Vietnam Era**

Compensation Service has determined that a special consideration of herbicide exposure on a factual basis should be extended to Veterans whose duties placed them on or near the perimeters of Thailand military bases.

*Reference*: For more information on verifying exposure to herbicides in Thailand, see **M21-1, Part IV, Subpart ii, 1.H.4.b**.

**IV.ii.1.H.4.b.
Verifying
Exposure to
Herbicides in
Thailand During
the Vietnam Era**

When a Veteran with service in Thailand during the Vietnam era claims SC for disability based on herbicide exposure, follow the steps in the table below to verify exposure to herbicides.

| Step | Action |
|------|--------|
| 1 | Did the Veteran serve in the Air Force in Thailand during the Vietnam era <br><br> • at one of the following Royal Thai Air Force Bases (RTAFBs) <br><br>      • U-Tapao <br>      • Ubon <br>      • Nakhon Phanom <br>      • Udorn <br>      • Takhli <br>      • Korat, or <br>      • Don Muang, *and* <br><br> • as an Air Force <br><br>      • security policeman <br>      • security patrol dog handler <br>      • member of the security police squadron, or <br>      • otherwise near the air base perimeter as shown by evidence of daily work duties, performance evaluation reports, or other credible evidence? <br><br> • If *yes*, concede herbicide exposure on a direct/facts-found basis. <br> • If *no*, proceed to Step 2. <br><br> ***Notes***: <br><br> • Concede herbicide exposure on a direct or facts-found basis for Army Veterans who served on RTAFBs in Thailand if the Veteran <br><br>      • provides a statement that he was involved in perimeter security duty, *and* <br>      • there is additional credible evidence supporting this statement. <br><br> • Army personnel may have provided RTAFB security early in the war before the base was fully operational. |
| 2 | Did the Veteran serve at a U.S. Army Base in Thailand during the Vietnam era <br><br> • as a member of a military police unit, or <br> • with a military police occupational specialty? <br><br><br> • If *yes*, concede exposure to herbicides on a facts-found or direct basis *if* the Veteran states his duty placed him at or near the base perimeter. <br> • If *no*, go to Step 3. |
| 3 | Ask the Veteran for the approximate dates, location, and nature of the alleged exposure using the *VBMS AO - Exposure General Notice* paragraph. |

| Step | Action |
|------|--------|
| 4 | Did the Veteran furnish this information within 30 days? <br><br> • If *yes,* proceed to Step 5. <br> • If *no,* <br><br>     • refer the case to the JSRRC coordinator to make a formal finding that sufficient information required to verify herbicide exposure does not exist (***Note***: For a sample of a formal finding, see **M21-1, Part IV, Subpart ii, 1.H.9.c**.), and <br>     • decide the claim based on the evidence of record, ensuring the rating decision and decision notice adequately explain the basis of the decision. |
| 5 | Review the information provided by the Veteran and proceed to Step 6. |
| 6 | Can exposure to herbicides be acknowledged on a direct or facts-found basis as a result of this review? <br><br> • If *yes,* proceed with any other necessary development before referring the claim to the rating activity. <br> • If *no,* proceed to Step 7. |
| 7 | Has the Veteran provided sufficient information to permit a search by JSRRC? <br><br> • If *yes*, send a request to JSRRC for verification of exposure to herbicides. <br> • If *no,* <br><br>     • refer the case to the JSRRC coordinator to make a formal finding that sufficient information required to verify herbicide exposure does not exist (***Note***: For a sample of a formal finding, see **M21-1, Part IV, Subpart ii, 1.H.9.c**), and <br>     • decide the claim based on the evidence of record, ensuring the rating decision and decision notice adequately explain the basis of the decision. <br><br> ***References***: For more information on <br><br> • submitting requests to JSRRC, see **M21-1, Part III, Subpart iii, 2.I.4.b (/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/554400000001018/content/554400000014163/M21-1,-Part-III,-Subpart-iii,-Chapter-2,-Section-I---Control-and-Follow-Up-of-Requests-for-Service-Records)**, and <br> • referring a claim to the JSRRC Coordinator, see the ***NWQ Playbook* (https://vaww.vashare.vba.va.gov/sites/OFOPlaybooks/Shared%20Documents/Forms/AllItems.aspx)**. |

*Reference*: For more information on Thailand military bases and herbicide exposure, see the **VA Public Health Site (http://www.publichealth.va.gov/exposures/agentorange/locations/thailand.asp)**.